IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. 2:16cr81 |
| | ) | |
| TRAVIS C. BROWN, | ) | |
| | ) | |
| Defendant. | ) | |

POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

The United States of America, through its attorneys, Dana J. Boente, United States Attorney, and V. Kathleen Dougherty, Assistant United States Attorney, hereby submits its position with respect to the defendant's sentencing factors. In the Presentence Investigation Report (PSR) prepared in this matter, the United States Probation Office determined the applicable guidelines range to be a term of 151 to 188 months incarceration, based upon an Offense Level Total of 33 and a Criminal History Category of II. In accordance with Section 6A1.2 of the Sentencing Guidelines Manual and this Court's policy regarding sentencing, the United States represents that it has reviewed the PSR and has conferred with defense counsel and the United States Probation Officer assigned to this matter.

There is one outstanding objection to the PSR, resolution of which will impact the calculation of the advisory guidelines range. The United States respectfully submits that the guidelines range has been properly calculated, but requests the Court impose a downward variant sentence of 140 months. Such a term is sufficient, but not greater than necessary, to accomplish the goals of 18 U.S.C. § 3553(a).

**I.      Background**

On May 31, 2016, Mr. Brown was named in a single-count Criminal Information charging him with Conspiracy to Engage in Sex Trafficking of a Minor, in violation of 18 U.S.C. § 1594(c) and 1591(a)(1), (b)(2), and (c). The criminal information also contained a forfeiture count. One week later, on June 7, 2016, he pleaded guilty to this charge with the benefit of a written plea agreement before United States Magistrate Judge Robert J. Krask. Judge Krask accepted the defendant's plea and continued the case pending the completion of a PSR. Mr. Brown has not yet been found or adjudged guilty.

## II.     Motion for Acceptance of Responsibility

The United States moves this Court, pursuant to U.S.S.G. § 3E1.1(b), to grant an additional one-level reduction in the defendant's offense level for acceptance of responsibility. The defendant assisted authorities in the investigation and prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby allowing the government to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently.

## III.    Outstanding Objection

The defendant has objected to receiving a two-level enhancement for unduly influencing a minor to engage in prohibited sexual conduct, under U.S.S.G. § 2G1.3(b)(2)(B). The determination about whether this enhancement applies is a very fact-bound one, but the commentary accompanying this guideline does not provide much clarification about what actions constitute improper influence. Rather, the commentary indicates only that the court should consider whether the defendant's "influence over the minor compromised the voluntariness of the minor's behavior," and notes that undue influence can be presumed when the defendant is at

least 10 years older than the minor. Id. cmt. n. 3(B).[1] Though there is sparse case law examining § 2G1.3(b)(2)(B) in the context of a conviction under 18 U.S.C. § 1594 or § 1591(a)(1), the available cases do provide support for the application of this enhancement to Mr. Brown's conviction. One common theme is that, when there is evidence that a teenaged victim is fearful of leaving their pimp, this enhancement is triggered. See, e.g., United States v. Hornbuckle, 784 F.3d 549, 554-555 (9th Cir. 2015) (enhancement appropriate where defendant forced victims to prostitute when they did not want to and victims testified that they were fearful of defendant's violence and anger); United States v. Pringler, 765 F.3d 445, 456 (5th Cir 2014) (upholding enhancement when victim testified that she was afraid of leaving the defendant based on verbal threats and observing his physical abuse of another victim). Similarly, a defendant's provision of shelter and threats to throw a victim out on the street have been held to support this enhancement in the context of a child sex trafficking conviction. See United States v. Basa, 817 F.3d 645, 650 (9th Cir. 2016).

Here, the PSR properly enhanced Mr. Brown's sentence for unduly influencing Jane Doe to engage in prostitution. Not only did the defendant threaten her when she told him she did not want to prostitute, he also told her he "owned her" and forced her to watch him have sex with another woman. These acts – which undoubtedly created an atmosphere of fear and intimidation – are sufficient to support this two-level enhancement. The defendant's objection should be overruled.

## IV.    Position on Sentencing and Argument

A sentence of 140 months incarceration is appropriate in light of the Section 3553(a) factors.

---

[1] During the commission of this offense, Mr. Brown was 25 years old and his victim (Jane Doe) was 16 years old. Thus, this presumption does not apply.

3

A. Nature and Circumstances of the Offense.

Two days after meeting sixteen year old Jane Doe, Mr. Brown chose to make money by prostituting her. On March 16, 2016, the defendant met Jane Doe at a residence in Newport News and, along with others, drove her to a hotel room in Virginia Beach for a night of partying, drinking, and drug use. The party continued through the next night, during which Jane Doe stayed with Mr. Brown and an adult female co-conspirator in a hotel room the defendant had rented. That night, Jane Doe rebuffed Mr. Brown's attempts to have sex with her to which the defendant replied that he "owned" her – before forcing her to watch him have sex with an adult female. On March 18, Mr. Brown and his co-conspirator took several steps to complete their plan to have Jane Doe prostitute for them. First, they drove her to a retail store to purchase lingerie for her, then took her to another hotel room for a sexually suggestive photo shoot, during which Mr. Brown directed Jane Doe on how to pose. Then, the co-conspirators wrote advertisements for sexual acts with Jane Doe and posted them on an Internet website along with the pictures they had taken. Once customers started contacting the phone number associated with these advertisements for Jane Doe, Mr. Brown and his co-conspirator arranged appointments for her, set the prices for her acts, provided condoms, monitored the progress of her appointments by text message, and collected the money she earned. Though Jane Doe told Mr. Brown she did not want to engage in prostitution, he insisted she had no choice but to "work" to pay for the hotel rooms he had rented. Given that Jane Doe had seen the defendant with a firearm on several occasions during the short time frame they knew each other,[2] she was not in a position to question his demand.

---

[2] Though Jane Doe did see Mr. Brown with a firearm, there is no indication he threatened her with it, threateningly displayed it to her, or in any way used it in her presence during the four days she was with him.

Through this set up, Jane Doe engaged in a total of three commercial sex appointments before being recovered by detectives from the Virginia Beach Police Department (VBPD) during an undercover operation on March 19, 2016. VBPD was alerted to Jane Doe's prostitution by an 18 year old patient at Sentara Norfolk General Hospital who reported that she and another girl (who was later identified as Jane Doe) were being forced to prostitute by Brown.

Mr. Brown's offense is a disturbing one, particularly given the short time frame between meeting Jane Doe and prostituting her, the direct involvement he had in every facet of her commercial sex acts, and the fact that he did not voluntarily stop prostituting women. Given the very limited time Jane Doe worked for the defendant, however, the United States submits that a sentence within the properly calculated guidelines range is too severe. Instead, the government submits that a term of 140 months would adequately reflect the seriousness of the defendant's offense.

      B.     <u>History and Characteristics of Mr. Brown.</u>

Mr. Brown is a healthy twenty-five year old man who was born and raised in Columbia, South Carolina, within a large family. The youngest of six children, the defendant bounced between his mother and father's homes as a child, but found both homes to be supportive, free of abuse, and with close-knit relationships. He appears to be closest with his father – a brick mason – and learned some of his father's trade by working side by side with him after the defendant was released from prison in 2012. Mr. Brown's youngest family member is his three year old child, who lives with her mother in South Carolina. Though the defendant claims he is very close to his daughter, and has spoken to her on the phone since his incarceration on this charge earlier this year, he could not provide contact information for her mother.

The defendant has no physical health problems apart from occasional headaches, and no mental or emotional problems. Mr. Brown does claim that he is in need of substance abuse treatment, based on his daily marijuana use and regular ecstasy use over the past several years. The United States concurs in this assessment, particularly given that Mr. Brown's offense involved partying and providing marijuana and "molly" to his teenaged victim. He would undoubtedly benefit from substance abuse education and assistance.

Mr. Brown chose to leave high school after his freshman year and, though he took GED courses while incarcerated, he has not yet obtained his GED. He is in need of some significant formal and vocational training – perhaps in his desired field of electrical work or as a commercial truck driver – in order to have a way of earning a legitimate income. Unsurprisingly, given his lack of job skills, Mr. Brown's adult employment history consists of two years of "off and on" employment as a brick mason with his father, including a stint at one company that fired the defendant for misconduct during a job. This sparse employment was undoubtedly supplemented by Mr. Brown's prostitution of girls and women.

Mr. Brown's criminal history consists of two minor offenses – speeding and failing to obey a police command – and one quite serious crime. In 2011, he was convicted of armed robbery in South Carolina, after he broke into a woman's home, hit her in the head with a handgun, and stole her phone and some cash. After serving his term of incarceration, Mr. Brown successfully completed a very short (approximately five months) term of court-ordered probation. Mr. Brown's previous history of violence and use of a handgun is serious, but also at a fair remove of time – his armed robbery was committed more than eight years ago.

The United States submits that the defendant's history and characteristics provide little in the way of mitigation.

C. Additional Factors to be Considered Under 18 U.S.C. § 3553(a) and Request for Downward Variant Sentence

Reflective of Congress's determination that Mr. Brown's crime is a severe one, he is facing a maximum term of Life imprisonment. Jane Doe has not requested any repayment for any expenses, thus there is no restitution due to the identified victim of his offense. Because Mr. Brown's properly-calculated advisory guidelines range of 151 to 188 months falls within Zone D of the Sentencing Table, he must be sentenced to a term of imprisonment. U.S.S.G. § 5C1.1(f).

The United States submits that a sentence of 140 months – below the bottom of Mr. Brown's properly calculated advisory guidelines range – would best fulfill the purposes of the statutory sentencing factors, for two reasons. First, the sentencing guidelines do not take into account the length of time a defendant engaged in the sex trafficking of a child. Mr. Brown's criminal conduct stretched over just a few days – as compared to several weeks, months, or even years. Additionally, the need for the Court to avoid unwarranted sentencing disparities among similarly situated defendants counsels for a sentence slightly below the guidelines floor. The United States submits that Mr. Brown's conduct is more egregious than that of Tajaika Blackston, but less severe than that of Ms. Blackston's co-defendant, Cordario Marcell Uzzle, both charged in Criminal Case 2:16cr2. Both Blackston and Uzzle, sentenced in the Norfolk Division this year, were members or associates of the Bloods street gang who prostituted a 16 year old girl over a several week period. Blackston served primarily as a recruiter for the group, and convinced the victim to prostitute, but who was not involved in the minutia of Jane Doe's appointments. She was convicted of conspiracy to engage in sex trafficking of a minor and received a sentence of 100 months. By contrast, Uzzle not only directly prostituted Jane Doe for approximately 2 days – just as Mr. Brown did – he also was extremely verbally and physically abusive towards his victim. Mr. Uzzle plead guilty to sex trafficking of a child and was

7

sentenced to 151 months imprisonment. The United States submits that these cases are similar enough to warrant comparison with Mr. Brown, and that a sentence of 140 months best fits his conduct, culpability, and offense.

Mr. Brown is in need of both educational and vocational training in order to become a productive member of society upon his release from imprisonment, and to provide him a way to earn money legitimately. While each factor under 18 U.S.C. § 3553(a) must be considered in fashioning an appropriate sentence, the United States would highlight the need for this sentence to reflect the seriousness of his offense and to provide just punishment for it, both of which goals would be satisfied by a sentence of 140 months incarceration. Further, a lengthy term of supervised release following his time in prison, would ensure that the public – and other potential victims – are protected from any potential future crimes.

## V. Conclusion

Mr. Brown chose to make money off of the commercial sex acts of a teenaged girl whom he had only known for a couple of days. This is a serious offense that, when viewed along with his history and characteristics as a defendant and the other factors under 18 U.S.C. § 3553(a), warrants a sentence of 140 months.

Respectfully submitted,

Dana J. Boente
United States Attorney

By:  \_\_\_\_\_/s/_____
V. Kathleen Dougherty
Assistant United States Attorney
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office: 757-441-6331; Fax: 757-441-6689
V.Kathleen.Dougherty@usdoj.gov

CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on the 6th day of September, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification to the following:

Kirsten R. Kmet, Esq.
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, VA 23510

  I HEREBY CERTIFY that on this 6th day of September, 2016, I mailed a true and correct copy of the foregoing to the following:

Karen R. Franklin
U.S. Probation Officer
827 Diligence Drive
Newport News, Virginia 23606

/s/
V. Kathleen Dougherty
Assistant United States Attorney
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number: 757-441-6331
Facsimile Number: 757-441-6689
V.Kathleen.Dougherty@usdoj.gov